1  Gary M. Messing, Bar No. 75363
      gary@majlabor.com
2  Wendi J. Berkowitz, Bar No. 145624
      wendi@majlabor.com
3  Matthew Taylor, Bar No. 264551
      matthew@majlabor.com
4  **MESSING ADAM & JASMINE LLP**
   235 Montgomery St., Suite 828
5  San Francisco, California 94104
   Telephone:    415.266.1800
6  Facsimile:    415.266.1128

7  Attorneys for Plaintiffs
   _____

8

9                **UNITED STATES DISTRICT COURT**

10              NORTHERN DISTRICT OF CALIFORNIA

11

12  RALPH DURAN, MICHAEL ESPARZA,          | Case No.

13              Plaintiffs,                 | **COMPLAINT FOR DECLARATORY
                                            | RELIEF AND INJUNCTIVE RELIEF:**
14          v.
                                            | **(1) VIOLATIONS OF 42 U.S.C. SECTION
15  CALIFORNIA DEPARTMENT OF               | 12112(D) [EMPLOYMENT
    FORESTRY AND FIRE PROTECTION; JOE      | DISCRIMINATION REGARDING
16  TYLER in his official capacity as Director of | MEDICAL EXAMINATIONS AND
    the California Department of Forestry and Fire | INQUIRIES];**
17  Protection; CALIFORNIA DEPARTMENT
    OF HUMAN RESOURCES; ERAINA             | **(2) VIOLATIONS OF 42 U.S.C. SECTION
18  ORTEGA in her official capacity as Director | 2000FF-1 [EMPLOYMENT
    of the California Department of Human   | DISCRIMINATION BASED ON
19  Resources; and DOES and DOE ENTITIES 1- | GENETIC INFORMATION];**
    20; inclusive,
20                                          | **(3) VIOLATIONS OF 42 U.S.C. SECTION
                Defendants.                 | 2000FF-5 [EMPLOYMENT
21                                          | DISCRIMINATION REGARDING
                                            | CONFIDENTIALITY OF GENETIC
22                                          | INFORMATION];**

23                                          | **(4) VIOLATIONS OF ARTICLE I,
                                            | SECTION 1 OF THE CALIFORNIA
24                                          | CONSTITUTION [RIGHT TO PRIVACY];**

25

26                                          | **(5) VIOLATIONS OF THE FOURTH
                                            | AMENDMENT OF THE U.S.
27                                          | CONSTITUTION [RIGHT TO PRIVACY];**

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(6) VIOLATIONS OF THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION [RIGHT TO PRIVACY]; AND**

**(7) VIOLATIONS OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION [RIGHT TO PRIVACY]**

Plaintiffs RALPH DURAN and MICHAEL ESPARZA (collectively, "Plaintiffs") hereby allege as follows:

**INTRODUCTION**

1.      On July 26, 2021, Defendant CALIFORNIA DEPARTMENT OF HUMAN RESOURCES ("CalHR"), the State of California ("State") agency responsible for issues related to State employee salaries, benefits and other working conditions, issued a notice to most if not all State employees ordering all "State departments" to "implement mandatory COVID-19 testing of unvaccinated state employees, in addition to other precautions already required for unvaccinated employees" ("CalHR Notice").

2.      Since the early days of the COVID-19 pandemic, Defendant CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION ("CAL FIRE" or "Department"), a State agency providing fire protection and other emergency services state-wide, has required, and currently requires, its employees with COVID-19 or COVID-19-type symptoms to "isolate" until they are cleared to return to work by a healthcare provider or public health office. This means that they are barred from entering any Department facility until they are deemed free of the virus.

3.      To assist in enforcing this rule, and in tandem with CalHR's issuance of the CalHR Notice, CAL FIRE implemented, in August 2021, a mandatory COVID-19 testing program ("Mandatory Testing"), by which only certain employees were forced to test on a weekly basis under threat of discipline for failure to test. Those employees required to test weekly included employees who were either not fully vaccinated against the disease, declined to disclose their vaccination status, or otherwise failed to attest to their vaccination status. If any employees in these categories refused to test, they would be subject to discipline, up to and including termination. Other CAL FIRE employees, who fall outside of these categories, are not *required* to test, but they are *permitted* to test through this program on a voluntary basis. Each Plaintiff is in the "not fully vaccinated/decline to disclose/fail to attest" group, and thus has been required to undergo Mandatory Testing.

4.      One of the State's primary testing vendors, Color Health, Inc. ("Color"), a private "healthcare services" company specializing in COVID -19 and genetic testing, operates/has

operated CAL FIRE's Mandatory Testing program. Color's testing program involves using a nasal swab to collect a biological sample from an employee to test for COVID-19. Before this happens, however, the employee—whether he or she is testing voluntarily or involuntarily per CAL FIRE's rules— must register for the test through an electronic process where he or she must provide personal information and agree to Color's privacy policies and terms of service. Color will not allow an employee to skip this registration requirement. Thus, if the registrant refuses to provide responses to the registration's questionnaire or consent to Color's policies, Color will bar them from testing. This means that by requiring certain employees to undergo testing, under the threat of possible termination, CAL FIRE is forcing them to complete Color's registration process.

5.     Color requires CAL FIRE employees to provide confidential, personal information in answering questions during the registration process, in submitting biological samples as part of the nasal swab test, and in relinquishing control of information produced as a result of the test. Color also requires these employees to expansively waive their privacy rights with respect to all of this information, thereby permitting Color to disclose confidential information to unknown, vaguely described third parties without advance notice to, or specific consent from, the employee. Because these privacy waivers are framed in broad language, Color has wide discretion to disclose this information to any number of third parties.

6.     By requiring employees to undergo COVID-19 testing using their agent, Color, which in turn requires employees to "consent" to broad privacy waivers before being permitted to utilize Color's COVID-19 testing services, Defendants CAL FIRE and CalHR, as well as Defendants JOE TYLER ("Tyler") and ERAINA ORTEGA ("Ortega") in their official, representative capacities as the directors of CAL FIRE and CalHR, respectively, have harmed Plaintiffs Ralph Duran ("Duran") and Michael Esparza ("Esparza") and other CAL FIRE employees, upon being forced to waive their privacy rights to avoid being disciplined. As a result of these involuntary, compulsory privacy waivers, Color has collected and retained registering CAL FIRE employees' biological samples and other private information without adequate protection from disclosure and, on information and belief, has disclosed and/or may disclose or continue to disclose, such information to third parties for non-legitimate purposes that extend far

beyond COVID-19 testing. On information and belief, because these unknown third parties are not subject to Color's privacy policies, and they have possessed and currently possess Plaintiffs' and other CAL FIRE employees' private medical, genetic and additional forced-disclosure personal information without being bound by any specific requirements to safeguard the information and without any restrictions on their ability to further disclose the information.

7.      Other CAL FIRE employees have refused to consent to CAL FIRE's coerced privacy waivers and were not permitted to utilize Color's COVID-19 test. As a result, these employees suffered adverse employment actions imposed by Defendants. For example, Jeremy Hill ("Hill"), a long-time CAL FIRE employee, refused to consent to Color's privacy waivers, but rather than face punishment, he used a substantial amount of his accrued leave time to avoid testing. Hill's expenditure of his leave time was involuntary and undertaken as a last resort, to avoid the only two other alternatives – forced waiver of his privacy rights or discipline, including possible termination. On information and belief, another CAL FIRE employee was suspended for six months for refusing to consent to Color's privacy terms.

8.      Based on the above conduct and the resulting harm to Plaintiffs and other CAL FIRE employees, Defendants have violated, and are violating, federal and California law. The federal law claims include violations of the Americans with Disabilities Act, 42 U.S.C. section 12101 et seq. ("ADA"), the Genetic Information Nondiscrimination Act, 42 U.S.C. section 2000ff, et seq, ("GINA"), and the rights to privacy and due process guaranteed under the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution. The state law claim includes the violation of the right to privacy under Article I, Section 1 of the California Constitution. Plaintiffs do not contest the State's now-dormant rule that unvaccinated employees and those who decline to reveal their vaccination status must be tested routinely for COVID-19. Rather, Plaintiffs seek injunctive and declaratory relief from this Court to (1) prevent Defendants from forcing them and similarly situated CAL FIRE employees to surrender their privacy rights as part of this testing process or expend accrued leave time to avoid the necessity to test, and (2) regain control of their private information from Defendants' agent, Color, and any persons or entities to whom Color has already disseminated any of it.

**THE PARTIES**

9. Plaintiff Duran is, and at all relevant times herein was, a fire captain permanently employed by CAL FIRE and assigned to Millerton Station 72, located in Friant, California. During all times the Mandatory Testing rule for COVID-19 has been in effect, Duran was subject to Mandatory Testing, and will remain subject to Mandatory Testing at any time Defendants, or any of them, require it to combat any disease outbreaks.

10. Plaintiff Esparza is, and at all relevant times herein was, a fire captain permanently employed by CAL FIRE and assigned to Station 9, located in Perris, California. During all times the Mandatory Testing rule for COVID-19 has been in effect, Esparza was subject to Mandatory Testing, and will remain subject to Mandatory Testing at any time Defendants, or any of them, require it to combat any disease outbreaks.

11. Defendant CAL FIRE is, and at all relevant times herein was, a State agency responsible for fire protection and stewardship of over 31 million acres of land across the State of California. CAL FIRE also provides varied emergency services, including municipal fire protection, emergency medical services, search and rescue response, hazardous materials mitigation, and natural disaster relief, throughout various counties in the State. At all relevant times herein, CAL FIRE employed Plaintiffs and all other CAL FIRE employees who were subject to Mandatory Testing. CAL FIRE's main office is located in Sacramento, California. CAL FIRE's employees are located throughout the State.

12. Defendant CalHR is, and at all relevant times herein was, the State department and agency designated as the representative of the Governor of the State to be the "employer" of CAL FIRE employees State-wide, pursuant to California Government Code §§ 3517 and 19815.4(g). As the employer, CalHR issued an order to unvaccinated/decline to disclose/fail to attest CAL FIRE employees that they will be subject to Mandatory Testing.

13. Defendant Tyler is the Director of CAL FIRE and is sued herein in his official, representative capacity. His office is located in Sacramento, California; his span of control is State-wide.

14. Defendant Ortega is the Director of CalHR and is sued herein in her official,

1    representative capacity. Her office is located in Sacramento, California; her span of control is

2    State-wide.

3          15.    Defendants CAL FIRE, CalHR, Tyler, and Ortega shall be referred to collectively

4    as "Defendants."

5          16.    Plaintiffs are ignorant of the true names and capacities of defendants sued herein as

6    DOES 1 through 20, and therefore sue these defendants by such fictitious names. Plaintiffs will

7    amend this Complaint to state their true names and capacities once they have been ascertained.

8    Plaintiffs are informed and believe, and on that basis allege, that each of these defendants is in

9    some manner responsible for the acts complained of herein.

10                              **JURISDICTION AND VENUE**

11         17.    This is a civil action brought pursuant to the Americans with Disabilities Act, 42

12   U.S.C. § 12101, et seq. ("ADA"), the Genetic Information Nondiscrimination Act, 42 U.S.C. §

13   2000ff, et seq. ("GINA"), the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution,

14   and Article I, Section I of the California Constitution. Accordingly, this Court has subject matter

15   jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

16   This Court also may exercise, pursuant to 28 U.S.C. § 1367, its supplemental jurisdiction to hear

17   and decide the California constitutional claim as it is so related to the federal law claims that,

18   together, the two sets of claims form part of the same case or controversy.

19         18.    Plaintiffs properly exhausted their administrative remedies for their ADA and

20   GINA claims, under 42 U.S.C. 2000e-5(e)(1), (f)(1), by presenting written claims, setting forth the

21   events and circumstances complained of herein, and lodging them with the appropriate agency, the

22   United States Equal Employment Opportunity Commission ("EEOC"), on or about April 6, 2022,

23   which occurred within two years of the accrual of the causes of action and prior to the filing of this

24   Complaint. On July 19, 2022, the EEOC issued a "right to sue" notice authorizing Plaintiffs to file

25   a lawsuit in any federal court of competent jurisdiction within 90 days.

26         19.    Venue is proper in the Northern District of California under 28 U.S.C.

27   § 1391(b)(1), (b)(2), and (c)(2), because CAL FIRE's and CalHR's operations, and thus their

28   employees' activities, including a substantial part of the events giving rise to the claims made

1    here, occur throughout the State, including at locations within this Court's jurisdiction, and

2    because Defendants CAL FIRE and CalHR are subject to this Court's personal jurisdiction with

3    respect to these claims.

4                               **FACTUAL ALLEGATIONS**

5         20.      On July 26, 2021, the Office of the Governor of the State of California issued a

6    two-page press release ("Press Release") announcing the implementation of a mandatory policy

7    requiring all State employees to either show proof of vaccination against COVID-19 or be tested

8    for infection at least once a week. On the same date, the Labor Relations Office of CalHR issued a

9    separate two-page notice, the CalHR Notice, regarding these measures to most if not all State

10   employee representatives, including CAL FIRE Local 2881 ("Local 2881"), the labor union that

11   represents CAL FIRE's employees in State Bargaining Unit 8, including Plaintiffs, in collective

12   bargaining and other labor matters. The CalHR Notice orders all "State departments" to

13   "implement mandatory COVID-19 testing of unvaccinated state employees in addition to other

14   precautions already required for unvaccinated employees."

15         21.      In compliance with the governor's order, CAL FIRE implemented, in August 2021,

16   Mandatory Testing for its employees who are not fully vaccinated. In its Temporary Directive to

17   all CAL FIRE employees issued on August 23, 2021, as well as the extension to that directive

18   issued on March 1, 2022, CAL FIRE warned employees that if they fail to get tested, they "shall

19   be excluded from CAL FIRE facilities" and "**may [be subject to] disciplinary action up to and**

20   **including dismissal**." (Emphasis added.) CAL FIRE also issued an email notice to its employees

21   on August 18, 2021 that provided the following warning: "If you do not test as required, you will

22   be excluded from CAL FIRE facilities. Failure to comply with the mandatory weekly testing

23   policy may result in disciplinary action up to and including dismissal."

24         22.      Also included in CAL FIRE's email notice was the mandate that all employees

25   subject to testing are required to register on Color's website. As part of this process, each

26   registering CAL FIRE employee must provide personal information, which includes, on

27   information and belief, date of birth, social security number, address, and health information

28   including pregnancy status and whether the employee or a member of the employee's family was

1   exposed to COVID-19.

2   **Color's Original Policies**

3   23.   During the registration process—and thus before taking the test—each registering

4   CAL FIRE employee must agree to Color's "Privacy Policy" and "Services Disclosures,"

5   including its "Terms of Service." If a registrant refuses to consent to these terms, Color will not

6   allow them to be tested. For those employees who must test per CAL FIRE's rules, a refusal to

7   consent to Color's policies means that they will be subject to discipline up to and including

8   dismissal.

9   24.   On information and belief, as of January 19, 2022, Color's policies were in the

10  form of an 11-page "Privacy Policy" ("Original Privacy Policy") and a 32-page set of "Services

11  Disclosures" ("Original Services Disclosures"), which included Color's "Terms of Service"

12  ("Original Terms of Service"). These documents, collectively referred to as "Color's Original

13  Policies," were provided to Local 2881 by Stephanie Portela, the Chief of CAL FIRE's Labor

14  Relations Office, who represented on January 19, 2022 that these were the privacy policies and

15  services disclosures that were both in effect on that date and applied to Mandatory Testing.

16  25.   The privacy waivers included in Color's Original Policies give Color significant

17  leeway to collect and to disclose employees' personal, confidential information, including

18  personal identifiers, test results, other health information, and internet activity, to various parties,

19  such as CAL FIRE and CalHR, other governmental agencies on the federal, state and local levels,

20  and other third parties. The potential number of third parties to which Color may disclose

21  information under these privacy waivers is significant. The privacy waivers have broad language

22  that encompasses third-party laboratories, healthcare providers and other service providers,

23  universities, independent companies that may or may not be involved with the COVID-19 testing

24  process, and **other third parties which are not identified**. Furthermore, the language used in

25  these waivers is vague and contradictory, thus causing confusion about what rights the employees

26  are actually waiving.

27  26.   The privacy waivers allow Color to disclose employees' confidential information to

28  a panoply of entities, some identifiable and others not, for many reasons beyond simply

1   completing the testing process. For example, Color may disclose information for research,

2   marketing, and business purposes that may even be entirely unrelated to its business of COVID-19

3   testing. Additionally, Color "may disclose [employees'] information **when [it] believe[s] in good**

4   **faith that doing so is appropriate or necessary in order to enforce our Terms of Service."**

5   (Emphasis added.) This vague language appears to be a catch-all for Color to apply in a broad

6   range of contexts, constituting a significant waiver of employees' privacy rights.

7   27.     Color's Original Privacy Policy also includes privacy waivers with respect to

8   employees' genetic and personal and family health information ("PFHI"), which is defined as

9   follows: "information about you and, for certain services, about your biological family [ ].

10  Personal and Family Health Information for Color's genetic Services also includes information

11  about your history of certain health conditions, your family history of those conditions, your

12  medication history, and any known genetic mutations in you or your family members."

13  28.     Color also disavows any responsibility for its [unnamed] partners and vendors'

14  products and how those partners and/or vendors provide services, and it refers registering

15  employees to these third parties' policies and terms and conditions. Thus, employees registering

16  for Color's COVID-19 tests, whether or not they agree, will be subject to yet another set or sets of

17  undefined and potentially expansive terms and conditions governing how these (again,

18  unidentified/unidentifiable) third parties handle their confidential information.

19  29.     Color also notifies registering employees that it may disclose their confidential

20  information to non-domestic third parties, which **may not be subject to federal or state**

21  **confidentiality laws.** Thus, CAL FIRE employees who are users of Color's COVID-19 testing

22  service are forced to consent to the possibility that their information is and will be afforded less

23  protection than what is required under American laws, or no protection at all if the recipient of the

24  information is located in a jurisdiction where no privacy laws exist.

25  **Color's Revised Policies**

26  30.     On information and belief, at some point after January 19, 2022, the date when

27  Local 2881 obtained copies of Color's Original Policies from CAL FIRE's labor relations team,

28  Color made significant changes to these policies, which are reflected in the terms on Color's

online registration portal for Mandatory Testing ("Registration Portal")[1] such that Color's current policies are different from Color's Original Policies discussed above in Paragraphs 23 – 29. Color's Registration Portal itself contains privacy waivers, and it also has electronic links to a Privacy Policy ("Revised Privacy Policy") and Terms of Service ("Revised Terms of Service") (The Registration Portal's privacy policy, as well as the Revised Privacy Policy and the Revised Terms of Service are referred to collectively as "Color's Revised Policies"). Registering CAL FIRE employees must agree to each of Color's Revised Policies to complete the registration process.

31.     It is not clear when Color's policies changed from Color's Original Policies to Color's Revised Policies and the Registration Portal is silent on this subject. The Revised Privacy Policy states that it was last updated in March 2022; however, on April 29, 2022, CAL FIRE's Chief of Labor Relations, Stephanie Portela, assured Local 2881 that Color's Original Policies still governed the Mandatory Testing process.

32.     Color's Revised Policies governing testing, in comparison to Color's Original Policies, appear to require more limited privacy waivers. For example, the Revised Privacy Policy states that its terms do not apply when Color is testing on behalf of an employer and a separate contract between that employer and Color exists. The State, through its Public Health Department, entered into an agreement with Color ("Color-CDPH Agreement") on August 18, 2021. Yet, the "statement of non-applicability" in the Revised Privacy Policy (which should apply because of the Color-CDPH Agreement) conflicts with the Revised Terms of Service, which require at Section 6(a), that registering CAL FIRE employees represent and warrant that they have reviewed and agree to Color's Revised Privacy Policy. Since the Revised Terms of Service incorporate the Revised Privacy Policy, they appear to bind registering CAL FIRE employees, including Plaintiffs, to the Revised Privacy Policy despite the existence of the Color-CDPH Agreement.

33.     CAL FIRE employees are not parties to the Color-CDPH Agreement. Thus,

---

[1] The Registration Portal is the internet site owned and operated by Color where CAL FIRE employees, including Plaintiffs Duran and Esparza, completed Color's testing registration process. The Registration Portal is accessible via computers, tablets, and smart phones.

registering CAL FIRE employees, including Plaintiffs, cannot enforce the terms of that agreement to the extent it includes terms governing the confidentiality of employees' private information obtained by Color. Furthermore, the Revised Privacy Policy states that Color may change its privacy policies at any time. Thus, there exists a real risk of Color unilaterally reinstating the privacy waivers in the Original Privacy Policy or adding new, more expansive waivers that would apply to test-takers.

34. The Registration Portal and the Revised Terms of Service include mandatory privacy waivers, and both continue to apply to registering CAL FIRE employees, including Plaintiffs, despite the existence of the Color-CDPH Agreement. Unlike the Revised Privacy Policy, the Registration Portal and the Revised Terms of Service makes no reference to the Color-CDPH Agreement. Accordingly, there are no provisions on the Registration Portal or in the Revised Terms of Service stating that the Color-CDPH Agreement supersedes their privacy terms.

35. In the Revised Terms of Service that apply to registering CAL FIRE employees, including Plaintiffs, these employees must grant Color a license to use any information they submit to Color. The provision in the Revised Terms of Service constitutes a substantial waiver of rights as the information that registering employees submitted to Color includes highly personal and confidential information and the license granted to Color to use this information "to operate and provide the Services" lacks any qualifying language limiting it to reasonable uses. The license is therefore excessively broad, allowing Color to disclose confidential information to a wide array of entities and individuals for a myriad of purposes that are not disclosed to the test-taker.

36. Similar to Color's Original Policies, the Registration Portal includes terms stating that Color or CDPH can share information for testing, billing and research purposes. Though a CAL FIRE employee can opt out of these studies, he or she can only do so after registering for the test (and thus first agreeing to this type of sharing) and submitting a request separately.

37. Various provisions of Color's Original Policies and Revised Policies allow Color and CDPH to disclose employees' confidential information to the extent permitted by federal, state, and local law. Because Defendants forced registering CAL FIRE employees, including Plaintiffs, to waive their privacy rights under pain of discipline, these privacy waivers are not

lawful and any disclosures of CAL FIRE employees' confidential information by Color, CDPH, or third-party recipients pursuant to these provisions of Color's Original Policies and Revised Policies are not permissible.

38.     Color's requirement that registering employees consent to the mandatory privacy waivers in both Color's Original Policies and Revised Policies is unmistakable, as the policies provide clear statements that the employee, by registering electronically to use Color's service, is authorizing Color to disclose his/her/their confidential information to third parties.

39.     Color informs employees in both Color's Original Policies and Revised Policies that it may retain records of their confidential information indefinitely, even if the employees request Color to stop using their information. These acknowledgements themselves constitute a privacy waiver for two reasons:  (a) Color remains in possession of information unwillingly disgorged by registering employees and (b) the longer Color retains such information, the greater the likelihood that it will be disclosed to third parties.

40.     Color's Original Policies and Revised Policies do not require Color to ensure that the recipients of registering CAL FIRE employees' private information limit the recipient's use or disclosure of such information. Accordingly, once Color discloses employees' private information, the recipients are not bound by even Color's flawed privacy policies.

**Plaintiff Michael Esparza**

41.     From approximately August 2021 to September 2022, most CAL FIRE employees who were subject to Mandatory Testing have participated in the Color registration process and thus have waived their privacy rights. A number of these employees objected to the Department requiring them to do so. Nonetheless, they consented to Color's privacy waivers in order to avoid suffering any adverse disciplinary action. By holding the threat of punishment over its employees, Defendants coerced those who object to Color's policies to acquiesce to them.

42.     For example, Plaintiff Esparza had strong reservations about divulging his personal information to Color and waiving his privacy rights pursuant to Color's policies. He preferred to decline to participate in Color's registration process for these reasons. Yet, he was unwilling to take this step because he feared being subject to discipline for failing to undergo Mandatory

1    Testing (which he could not do without registering with Color). He did not have enough accrued

2    leave to take time off to avoid discipline. Therefore, he registered with Color, under protest, a

3    minimum of three times.

4            **Plaintiff Ralph Duran**

5            43.     Another example is Plaintiff Duran. Like Esparza, Duran would have boycotted

6    Color's registration process to protect his privacy if he was not going to be punished for it. He is

7    confident that had he refused to register, he would have been disciplined. He received written

8    warnings from CAL FIRE regarding the consequences of refusing to test, which included

9    discipline up to and including dismissal. It is known in the Department that management planned

10   to act on these warnings, including suspending employees for 6 months without pay for their first

11   refusal to test and terminating them upon a second refusal to test. Duran also did not have enough

12   accrued time to take personal leave for a significant period of time.

13           **Other CAL FIRE Employees**

14           44.     Jeremy Hill ("Hill"), a fire captain specialist, has worked for CAL FIRE for over 30

15   years, and currently performs law enforcement and investigatory duties for the Department.

16           45.     Due to his unvaccinated status, Hill was required to undergo Mandatory Testing

17   through Color's testing process under the Department's rules. On December 31, 2021, he

18   informed his superiors, Battalion Chief Seth Brown and Division Chief Michael Bowman, that he

19   refused to consent to Color's Privacy Policy and Terms of Service because it would allow Color to

20   use his personal information beyond the purposes of the COVID-19 test, including sharing his

21   personal information with unidentified third parties. **But, Hill was careful to point out that he

22   was not refusing to take the test—he simply disagreed with Color's policies.** In fact, he told

23   his superiors that while he refused to register with Color, he was willing to take the COVID-19

24   self-test in front of them as proof of his compliance with the Department's testing policy. They

25   refused Hill's proposal, however, telling Hill that he must register with Color because it is a

26   mandatory process.

27           46.     At that point, Hill was left with only one avenue to avoid Color's privacy waivers

28   while remaining free from discipline for refusing to take the test. His long tenure with the

1   Department allowed him to accrue a large amount of paid leave time that he was hoping to use

2   incrementally over time to spend with his family. He abandoned this plan, however, to avoid the

3   invasion of his privacy. He used his accrued leave time to take time off from work from December

4   31, 2021 to February 23, 2022.

5       47.     When Hill returned to work on February 24, 2022, the Department allowed him to

6   take a different COVID-19 test from a different vendor which collected his saliva for testing rather

7   than taking a nasal swab. The change in testing resulted from Hill's request for a religious

8   exemption so he would not have to be subjected to, at least in part, Color's nasal swab test. The

9   Department reasonably accommodated Hill by allowing him to use the saliva test. Though Hill's

10  application for a religious exemption was submitted in November 2021, the saliva test did not

11  become available until after December 31, 2021, when Hill was on leave.

12      48.     Hill is informed and believes that although he had to consent to limited privacy

13  waivers for the saliva test, these were far less extensive than those required by Color. To

14  Plaintiffs' knowledge, the only employees who are able to use the saliva test are ones who have

15  applied for religious or medical exemptions from COVID-19 nasal swab testing and have been

16  reasonably accommodated by the Department by being offered the saliva test. Thus, most

17  employees who are subject to testing must use the Color nasal swab tests regardless of any

18  objections that they may have regarding its privacy waivers.

19      49.     Upon information and belief, at least one employee was suspended for six months

20  for refusing to comply with Mandatory Testing. Although that employee objected to the

21  Department's testing regime for reasons other than the privacy waivers at issue here, his

22  punishment shows the severe consequences that employees face if they boycott testing over

23  Color's privacy waivers and have insufficient accrued leave time, the only other option available

24  to them.

25      **CAL FIRE Announced That It Is "Transitioning Away" from Mandatory Testing**

26      50.     In an email dated September 15, 2022 ("September 2022 Notice"), CAL FIRE

27  notified employees that it would begin "transitioning away from mandatory testing." The notice

28  gave little explanation regarding the future of the program since the Department is "currently

working on the details" of the transition. The only details it did provide were that the Department
and its employees were still required to comply with any remaining rules governing the prevention
of the spread of infection. Specifically, the Department, in its September 22 Notice, stated as
follows:

- The end of the routine testing program "does not end our responsibility to follow
  Cal/OSHA Emergency Temporary Standard and the corresponding Department
  COVID Prevention Plan, as well as Department of Public Health guidelines."
  Accordingly, the Department "will likely retain test kits in specific locations to
  provide to employees if the need arises."

- "Similarly, until CalHR provides further direction regarding the disposition of testing
  supplies, all testing sites should retain what they have on hand."

- "COVID Positive Reporting and Notification requirements will remain in place until
  further notice.  As such, units and programs should continue to follow Positive
  COVID 19 Reporting Guidance, as outlined in the COVID-19 Guidance on the CAL
  FIRE intranet, if an employee indicates a positive test."

- "CAL FIRE employees are still subject to any testing mandates in place with local
  governments or other State departments."

The September 2022 Notice ended with the acknowledgement that details regarding the future of
the testing program remain undecided and that the Department will share more information when it
becomes available. Given these caveats and lack of any substantive details regarding how the
transition from Mandatory Testing will occur, it is not clear which aspects of the program are
ending and which are continuing. It remains possible, even likely, that testing mandates may
remain in place for some employees who are unvaccinated or refuse to disclose their vaccination
status, or even for vaccinated employees who have been exposed to COVID-19.

     51.     The Department's transition away from Mandatory Testing does not render
Plaintiffs' claims moot, for the following reasons:

     (a)     First, even if Defendants were to cease requiring CAL FIRE employees to test for
COVID-19 as part of this transition, on information and belief, Color will continue to retain the

1  confidential information of employees who have already tested through the mandatory program.

2  ("Although Color can remove [employees'] information from its active database, some or all of

3  [employees'] information will remain in Color's inactive database for compliance with legal,

4  regulatory or other requirements.") Thus, a real risk remains that Color will disclose such

5  information to third parties. Defendants should require Color to identify those employees whose

6  information it continues to retain, to cease using such information, and to delete or otherwise

7  destroy such information in its records.

8    (b)    Second, on information and belief, Color has already disclosed employees'

9  confidential information to third parties in violation of employees' rights. Defendants should

10  require Color to (i) name those third parties to which it has disclosed employees' confidential

11  information, (ii) identify those employees whose confidential information has been compromised,

12  and (iii) use its best efforts to cause these third parties to stop using, delete, or otherwise destroy,

13  employees' confidential information.

14    (c)    Third, as indicated in the September 2022 Notice, CAL FIRE may continue to

15  mandate testing for at least certain employees in certain contexts going forward. For example, the

16  September 22 Notice states that employees must continue to test if State or local rules require it.

17  This could include the circumstance where future outbreaks require Defendants to reinstate routine

18  Mandatory Testing for large numbers of CAL FIRE employees. Accordingly, Defendants should

19  prohibit Color from requiring employees to waive their privacy rights in future testing.

20    **Defendants Knew That Color Required Employees To Waive Privacy Rights**

21    52.    Defendants should have known from as early as August 2021 that Color required

22  CAL FIRE employees to waive their privacy rights. Pursuant to its agreement with the State,

23  Color administered the Mandatory Testing program through a "single program and software

24  platform," starting in August 2021. Thus, Defendants could have accessed this platform to view

25  how the registration process was conducted and what terms employees were required to agree to

26  before testing. Plaintiffs also informed CAL FIRE that Color's privacy waivers were a prerequisite

27  to testing. At a minimum, as stated above in Paragraph 45, Hill informed his superiors on

28  December 31, 2021 that Color prohibited employees from taking a COVID-19 test without first

1  consenting to its privacy policy and terms of service, to which he objected.

2      53.    Furthermore, in November 2021, Local 2881 contacted the Department on behalf

3  of its members, including Plaintiffs, to discuss the forced privacy waivers and the harm that its

4  members will suffer and have suffered by the coerced waivers, in the form of retention and

5  disclosure, to unknown third parties, of their personal, confidential information. The union and the

6  Department met and conferred multiple times regarding these issues, but the Department failed to

7  take any actions to protect employees' information from disclosure.

8      54.    On February 16, 2022, Local 2881 sent a demand to the Department, on behalf of

9  its members, including the Plaintiffs, to cease and desist from forcing unvaccinated employees (or

10  those who chose to keep their vaccination status to themselves) to waive their privacy rights as

11  part of the Mandatory Testing program, and to either compel Color to change its policies

12  immediately before any further tests are conducted or immediately stop the testing program

13  altogether until another testing vendor, who does not require illegally expansive privacy waivers,

14  can provide the tests. Local 2881 further demanded that the Department immediately take all legal

15  steps necessary to prevent further dissemination of, and to retrieve, the confidential information

16  that registering CAL FIRE employees have provided to Color as part of the testing process. It also

17  requested that the Department provide information sufficient to identify those employees whose

18  information was disseminated by Color to third parties and to explain any steps that the

19  Department has taken to stop such disclosures and retrieve employees' confidential information.

20  Again, the Department failed to take any action regarding the union's concerns.

21      **Plaintiffs Exhausted Administrative Remedies**

22      55.    On April 6, 2022, Plaintiffs filed a charge with the EEOC alleging violations of the

23  ADA and GINA. On July 19, 2022, the EEOC issued a "right to sue" notice, authorizing Plaintiffs

24  to file a lawsuit within 90 days. Plaintiffs timely filed this action within this time limit.

25      56.    The EEOC forwarded Plaintiffs' allegations to the CRD, which issued a "right to

26  sue" notice with the filing date of April 6, 2022. Per the notice, Plaintiffs have one year in which

27  to file suit. This time period shall be tolled during the pendency of the EEOC's investigation,

28  which ended on July 19, 2022. Plaintiffs timely filed this action within this time limit.

**FIRST CAUSE OF ACTION**

**VIOLATION OF 42 U.S. CODE SECTION 12112(D)**

**Against Defendants Tyler and Ortega and Does 1-10**

57.    Plaintiffs hereby incorporate by reference Paragraphs 1 – 56 hereof as though fully set forth herein.

58.    The ADA limits the type of medical inquiries and examinations an employer may require of its employees as well as the ways in which an employer may use confidential information obtained from such inquiries. Under the ADA, employers "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). *See also,* 29 C.F.R. § 1630.14(c). Section 12112(d)(4)(A) of the ADA applies in this case because the State has determined that it is necessary for its unvaccinated employees, and those who choose not to disclose their vaccination status, to undergo Mandatory Testing for COVID-19 to determine whether they can perform their jobs.

59.    COVID-19 may reach the level of a disability under Title I of the ADA, pursuant to EEOC guidance. *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws,* (Updated on July 12, 2022), *available at* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws*,* at N.2. "Even if the symptoms related to COVID-19 come and go, COVID-19 is an actual disability if it substantially limits a major life activity when active." *Id.* Examples where COVID-19 substantially limits major life activities are: "ongoing but intermittent multiple-day headaches, dizziness, brain fog, and difficulty remembering or concentrating;" "supplemental oxygen [treatment] for breathing difficulties and ha[ve] shortness of breath, associated fatigue, and other virus-related effects that last, or are expected to last, for several months;" or "heart palpitations, chest pain, shortness of breath, and related effects due to the virus that last, or are expected to last, for several months." *Id.* at N.4.

60.    Upon information and belief, CAL FIRE's Mandatory Testing program is intended

to identify those employees who have COVID-19—and thus may potentially have a disability—and make sure that they do not report to work. Mandatory Testing constitutes the type of medical examination which is covered by 42 U.S.C. § 12112(d).

61.     All information obtained from these types of "medical examinations" or "inquiries" must remain confidential:

> [I]nformation obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, except that—(i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations; (ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and (iii) government officials investigating compliance with this chapter shall be provided relevant information on request....

42 U.S.C. § 12112(d)(3)(B). *See also* 29 C.F.R. § 1630.14(c)(1) (providing similar language).

62.     Defendants Tyler and Ortega, in their official capacity and as representatives of CAL FIRE and CalHR, respectively, have violated and continue to violate the ADA and its regulations by requiring employees, on pain of discipline up to termination, to use Color for Mandatory Testing, and in doing so, to provide confidential information to Color during the registration process and consent to its privacy policies, which require significant waivers of their privacy rights, including coerced consent to release of their personal information to unknown actors. These Defendants have been aware, during the time that Mandatory Testing has been in place, that Color requires employees to waive their privacy rights. At minimum, individual employees have informed CAL FIRE's management of these waivers, and Local 2881 has expressed on multiple occasions its concerns to the Department that these privacy waivers violate the law. Defendants' agent, Color, formulated these policies, and Defendants, including Tyler and Ortega, knowingly enforce the policies, which include expansive privacy waivers. A member of the public has the ability to decline Color's policies, without consequence, if he or she objects to them, and can either refuse to test or find another testing company whose policies are less objectionable. CAL FIRE employees, including Plaintiffs, do not have this freedom. If they refuse

to consent to Color's terms, they cannot take the test and they will suffer an adverse employment action, including being forced to use their accrued leave because they are deemed not fit for duty or being disciplined, up to and including dismissal.

63.     Plaintiffs and other CAL FIRE employees have been irreparably harmed by Tyler's and/or Ortega's violation of the ADA, the full extent of which is unknown at this time. (a) As stated above, upon information and belief, at least one employee has suffered discipline for refusing to register with Color. (b) Hill objected to Color's privacy policies, and the only way he could avoid waiving his privacy rights, without being disciplined, was to use his accrued leave. (c) Other CAL FIRE employees, like Plaintiffs Duran and Esparza, also object and have objected to disclosing their personal, confidential information to Color and being subject to its privacy waivers; they have suffered the substantial harm of having their privacy rights nullified to avoid disciplinary action.

64.     The irreparable harm resulting from these privacy waivers is substantial, since many of Color's terms give Color significant discretion to disclose registering employees' confidential information. Of these, two terms in Color's Original Policies are particularly egregious. First, Color has wide discretion to "disclose [employees'] information **when [it] believe[s] in good faith that doing so is appropriate or necessary in order to enforce our Terms of Service."** (Emphasis added.) Second, Color may disclose information to third parties that "**may no longer be protected by federal or state medical confidentiality laws** if the recipient of [employee's] PHI is not subject to such laws and may be redisclosed by the recipient." (Emphasis added.) Even the privacy waivers in Color's Revised Policies, which apply to current testing, are legally infirm, notably, Color's requirement that employees grant it a license to "use," which may include disclosing, any User Content for a broad range of activity, that is vaguely described as "operat[ing] and provid[ing]" Color's services. If prompt and immediate injunctive relief is not granted, Plaintiffs and other CAL FIRE employees face a significant risk of more irreparable harm as their privacy rights are waived and their confidential information is disclosed to third parties. Such threat of future injuries cannot be adequately compensated through an award of damages or otherwise remedied at law.

65.    WHEREFORE, Plaintiffs pray for the relief set forth in Paragraphs 1 – 12 in the Prayer section below, to avoid further irreparable harm.

**SECOND CAUSE OF ACTION**

**VIOLATION OF 42 U.S. CODE SECTION 2000FF-1(B)**

**Against Defendants Tyler and Ortega and Does 1-10**

66.    Plaintiffs hereby incorporate by reference Paragraphs 1 – 65 hereof as though fully set forth herein.

67.    Color states in its Original Privacy Policy that it may use employees' genetic information for research purposes with "third party collaborators." This language indicates that Color intentionally collects and retains employees' genetic information from the COVID-19 nasal swab tests; thus, this information may be included in the test "Results," "PHI," and other "information" to which Color's Original Privacy Policy and Original Services Disclosures refer. Color's Original Privacy Policy does not define or describe what is specifically included under PHI, thus it may include genetic information. And, the Original Privacy Policy seeks a waiver from the employee to transfer "some or all information about you in connection with" business transactions, or worse, negotiations for these transactions that may end up terminating before they are concluded. Color's Revised Policies also permit Color to disclose "personal" and "medical" information, which are defined to include genetic information and family history. For example, in the Revised Terms of Services, "Services" is defined as including "[g]enetic testing (a "Genetic Test(s)") and supporting services," and "User Content" is defined as including "family history." The Registration Portal also states that either Color or CDPH may share employees' information for research studies.

68.    Section 2000ff-1(b) of GINA prohibits an employer from "request[ing], requir[ing], or purchas[ing] genetic information with respect to an employee or a family member of the employee" except under specific circumstances. "Genetic information" as used in GINA means "with respect to any individual, information about (i) such individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual." 42 U.S.C. 2000ff(4)(A). Because Defendants,

including Tyler and Ortega, are coercing registering CAL FIRE employees, including Plaintiffs, under the threat of discipline, to complete Color's registration process and thereby consent to the deliberate collection of data including genetic information and family history, all of which falls squarely under the definition of "genetic information" in the statute, Defendants Tyler and Ortega, in their official capacity and as representatives of CAL FIRE and CalHR, respectively, violate Section 2000ff-1(b) of GINA.

69.     Defendants, including Tyler and Ortega, force CAL FIRE employees to undergo Mandatory Testing, including Color's obligatory registration and the nasal swab test, under threat of discipline; therefore, any collection of data regarding employees' family histories and individual genetic material from the testing process is intentional. Upon information and belief, none of the following -- CAL FIRE, CalHR, Tyler, Ortega or Color -- instructed registering CAL FIRE employees **not** to provide family history or genetic information, and no exclusion of collection or use of family history or genetic information from registering CAL FIRE test-takers is undertaken. To the contrary, Color expressly includes in its policies active solicitation of, and at bare minimum, the option to collect and use, family history and genetic information.

70.     Registering CAL FIRE employees do not provide knowing, voluntary consent to the collection and use of their family history or genetic information. Rather, employees' consent to Color's Privacy Policy and Service Disclosures are coerced by Defendants' insistence on registering CAL FIRE employees' consent to Color's policies.

71.     Defendants, including Tyler and Ortega, had a duty, which they failed to fulfill, to ensure that Color did not and does not engage in conduct violating GINA. The regulations state,

> The prohibition on acquisition of genetic information, including family medical history, applies to medical examinations related to employment. A covered entity must tell health care providers not to collect genetic information, including family medical history, as part of a medical examination intended to determine the ability to perform a job, and must take additional reasonable measures within its control if it learns that genetic information is being requested or required.

29 C.F.R. § 1635.8(d).

72.     Plaintiffs and other registering CAL FIRE employees have been irreparably harmed by the violation of 42 U.S.C. Section 2000ff-1(b), the full extent of which is unknown at this time. The genetic information and family histories of Plaintiffs Duran and Esparza and other registering CAL FIRE employees are no longer within their control due to the coerced submission to Color's policies.

73.     WHEREFORE, Plaintiffs pray for the relief set forth in Paragraphs 1 – 12 in the Prayer section below, to avoid further irreparable harm.

**THIRD CAUSE OF ACTION**

**VIOLATION OF 42 U.S. CODE SECTION 2000FF-5(B)**

**Against Defendants Tyler and Ortega and Does 1-10**

74.     Plaintiffs hereby incorporate by reference Paragraphs 1 – 73 hereof as though fully set forth herein.

75.     Defendants Tyler and Ortega, in their official capacity and as representatives of CAL FIRE and CalHR, respectively, violate Section 2000ff-5 of GINA, which mandates that an employer treat genetic information "as a confidential medical record," 42 USC § 2000ff-5(a), and thus limits an employer's ability to disclose employees' genetic information. *See* 42 USC § 2000ff-5(b). Though there are certain carve-outs under this Section 2000ff-5(b) allowing such information to be disclosed under certain circumstances, none of these apply here. Section 2000ff-5(b)(2), for example, provides an exception for research purposes, but this research must be "conducted in compliance with the regulations and protections provided for under part 46 of title 45, Code of Federal Regulations," which concerns "Protection of Human Subjects." Color does not address whether these regulations are being followed.

76.     Section 2000ff-5(b)(6) permits disclosure of information regarding "the manifestation of a disease or disorder in family members of" an employee to government agencies concerning "a contagious disease that presents an imminent hazard of death or life threatening illness." 42 U.S.C. § 2000ff-5(b)(6). Though COVID-19 fits this description, Color's privacy waivers permit it to disclose genetic information to parties other than federal, state, and local agencies. Thus, Color's disclosure of such information to third parties violates GINA.

77.    Plaintiffs and other similarly situated employees have been irreparably harmed by Defendants' violation of Section 2000ff-5 of GINA, the extent of which is unknown at this time.

78.    WHEREFORE, Plaintiffs pray for the relief set forth in Paragraphs 1 – 12 in the Prayer section below.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF RIGHT OF PRIVACY UNDER ARTICLE I, SECTION 1 OF THE**

**CALIFORNIA CONSTITUTION**

**Against All Defendants and Does 1-20**

79.    Plaintiffs hereby incorporate by reference Paragraphs 1 – 78 hereof as though fully set forth herein.

80.    Defendants violate registering CAL FIRE employees', including Plaintiffs' right to privacy under Article I, Section 1 of the California Constitution, which states: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const., Art. I, § 1.

81.    Registering CAL FIRE employees, including Plaintiffs, have a legally protected privacy interest in their medical information, including the biological samples collected from Plaintiffs during the COVID-19 test, the information that Color, Defendants CAL FIRE and CalHR, and third-parties working with Color obtained from testing these samples, and the confidential personal information that registering CAL FIRE employees, including Plaintiffs, provided as part of the registration process. The samples, combined with personal records, contain information identifying registering CAL FIRE employees, including Plaintiffs. On information and belief, they also contain sensitive information revealing characteristics about such employees', including Plaintiffs', current and past health conditions, genetics, and family histories.

82.    Registering CAL FIRE employees, including Plaintiffs, have a reasonable expectation of privacy in their personal information, including medical information, genetic data, family history, and other similar data forcibly collected, under protest, by Defendants' agent, Color, at Defendants' instruction and behest. Defendants' Mandatory Testing program is intended

1    to identify which employees may have COVID-19. Health providers who provide diagnostic

2    services generally provide assurances to patients that their personal information will be protected.

3    The policy waivers required by Color's terms of service are not consistent with these types of

4    assurances, however, as they are excessively broad. They give Color, governmental authorities,

5    and third parties the discretion to collect, maintain and disclose employees' personal information

6    for a wide range of purposes that go beyond testing and diagnostics.

7           83.    Registering CAL FIRE employees', including Plaintiffs', coerced waivers of their

8    privacy rights do not make their expectation of privacy unreasonable. Their consent was given

9    involuntarily as a result of Defendants' threats to impose discipline on those who did not comply.

10          84.    On information and belief, Defendants' wrongful conduct has caused Color to

11   disclose, and/or at minimum, have the means and ability to disclose, registering CAL FIRE

12   employees', including Plaintiffs', private information to third parties for reasons unrelated to

13   testing, and has caused CAL FIRE employees' information to be retained by Color and third

14   parties without adequate safeguard from further disclosure. Those CAL FIRE employees, such as

15   Hill, who refused to waive their privacy rights per Color's policies, also suffered harm – in the

16   form of compulsory use of accrued leave (Hill) or discipline. Defendants' conduct in requiring

17   CAL FIRE employees to consent to broad policy waivers or suffer the consequences constitutes a

18   serious, substantial intrusion into Plaintiffs' privacy rights.

19          85.    Defendants' conduct in requiring CAL FIRE employees to consent to Color's broad

20   privacy waivers serves no compelling or legitimate interest. Additionally, on information and

21   belief, at all relevant times Defendants have been able to exert substantial leverage in negotiating

22   the terms of their vendor contracts, including those with their testing vendors, and in the absence

23   of a satisfactory agreement, Defendants may retain alternate vendors. Given Defendants'

24   bargaining power and vendor options, Color's privacy policies, which provide inadequate

25   protection from disclosure, offer no safe harbor to Defendants when balanced against Plaintiffs'

26   fundamental interest in the privacy of their personal information.

27          86.    Plaintiffs and other similarly situated CAL FIRE employees have been irreparably

28   harmed by Defendants' violation of Article I, Section 1 of the California Constitution, the extent

1    of which is unknown at this time.

2        87.    WHEREFORE, Plaintiffs pray for the relief set forth in Paragraphs 1 – 12 in the

3    Prayer section below.

4                            **FIFTH CAUSE OF ACTION**

5    **VIOLATION OF THE RIGHT TO PRIVACY UNDER THE FOURTH AMENDMENT**

6                            **OF THE U.S. CONSTITUTION**

7            **Against Defendants Joe Tyler and Eraina Ortega and Does 1-10**

8        88.    Plaintiffs hereby incorporate by reference Paragraphs 1 – 87 hereof as though fully

9    set forth herein.

10       89.    The Ninth Circuit Court of Appeals employs a balancing test to determine whether

11   the governmental interest in obtaining an individual's personal information outweighs his or her

12   privacy interest under the Fourth Amendment of the U.S. Constitution. *Tucson Woman's Clinic v.*

13   *Eden*, 379 F.3d 531, 551 (9th Cir. 2004) (abrogated on other grounds by *Dobbs v. Jackson*

14   *Women's Health Organization*, 142 S.Ct. 2228 (2022)). This test looks at the following five

15   factors: "(1) the type of information requested, (2) the potential for harm in any subsequent non-

16   consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the

17   degree of need for access, and (5) whether there is an express statutory mandate, articulated public

18   policy, or other recognizable public interest militating toward access." *Id. See also, Doe by and*

19   *through Tanis v. County of San Diego*, 576 F.Supp.3d 721, 735 (S.D. Cal. 2021) citing *Ferm v.*

20   *United State Treasury (In re Crawford)*, 194 F.3d 954, 959 (9th Cir. 1999).

21       90.    On information and belief, the private information and data gathered by Color from

22   registering CAL FIRE employees, including Plaintiffs, during the registration and testing required

23   by Defendants, including Defendants Tyler and Ortega acting in their official and representative

24   capacity, includes a tissue sample and, on information and belief, date of birth, social security

25   number, address, and health information including pregnancy status and whether the employee or

26   a member of the employee's family was exposed to COVID-19.

27       91.    Disclosure of the types of sensitive details gathered from registering CAL FIRE

28   employees to Color is harmful in and of itself, even without additional adverse consequences.

1   However, the potential for further disclosure to a wide range of recipients, control of which is

2   entirely outside the reach of the individuals about whom the details pertain, vastly increases the

3   possibility of misuse of the information in ways that are predictable (employment discrimination

4   and harassment, for example) as well as unpredictable.

5       92.     On information and belief, Defendants' (including Defendants Tyler and Ortega)

6   coercive conduct has caused Color to disclose, or have the means and ability to disclose,

7   registering CAL FIRE employees', including Plaintiffs', private information to third parties for

8   reasons other than legitimate testing purposes. This conduct has also caused registering CAL FIRE

9   employees', including Plaintiffs', information to be retained by Color and third parties without

10   adequate safeguard from further disclosure.

11       93.     Color's testing properly allows Defendants to learn whether their employees have

12   tested positive or negative for COVID-19. However, receipt, use, and/or divulging of, or ability to

13   divulge, the additional private information disgorged under protest by registering CAL FIRE

14   employees is unnecessary and lacks any compelling justification.

15       94.     Plaintiffs and other similarly situated employees have been irreparably harmed by

16   the violation by Defendants Tyler and Ortega of the Fourth Amendment of the U.S. Constitution,

17   the extent of which is unknown at this time.

18       95.     WHEREFORE, Plaintiffs pray for the relief set forth in Paragraphs 1 – 12 in the

19   Prayer section below.

**SIXTH CAUSE OF ACTION**

**VIOLATION OF THE FIFTH AMENDMENT OF THE**

**U.S. CONSTITUTION**

**Against Defendants Joe Tyler and Eraina Ortega and Does 1-10**

24       96.     Plaintiffs hereby incorporate by reference Paragraphs 1 – 95 hereof as though fully

25   set forth herein.

26       97.     Individuals have a right of privacy under the Due Process Clause of the Fifth and

27   Fourteenth Amendments, particularly with respect to the protection of personal medical

28   information and records. *See Yin v. State of California*, 95 F.3d 864, 870 – 871 (9th Cir. 1996).

1   The Ninth Circuit analyzes the violation of such rights under the rubric of the Fourth Amendment.

2   *See id. See also, Norman-Bloodshaw v. Lawrence Berkeley Laboratory*, 125 F.3d 1260, 1269 (9th

3   Cir. 1998) (applying Fourth Amendment analysis to assess violations of right to privacy regarding

4   medical tests while acknowledging that such tests implicated rights protected under Fifth and

5   Fourteenth Amendments).

6          98.     For the reasons discussed in Paragraphs 88 – 94 above, Defendants Tyler and

7   Ortega, in their official and representative capacities as directors of CAL FIRE and CalHR,

8   respectively, have violated and are violating Plaintiffs' right to privacy under the Fifth

9   Amendment.

10         99.     Plaintiffs and other similarly situated employees have been irreparably harmed by

11  Defendants' violation of the Fifth Amendment of the U.S. Constitution, the extent of which is

12  unknown at this time.

13         100.    WHEREFORE, Plaintiffs pray for the relief set forth in Paragraphs 1 – 12 in the

14  Prayer section below.

15                          **SEVENTH CAUSE OF ACTION**

16              **VIOLATION OF THE FOURTEENTH AMENDMENT OF THE**

17                                **U.S. CONSTITUTION**

18             **Against Defendants Joe Tyler and Eraina Ortega and Does 1-10**

19         101.    Plaintiffs hereby incorporate by reference Paragraphs 1 – 100 hereof as though

20  fully set forth herein.

21         102.    The Constitutional right to privacy extends to protecting medical information from

22  disclosure. *See Norman-Bloodshaw*, 125 F.3d at 1269. The Ninth Circuit analyzes violations of the

23  right to privacy under the Fourteenth Amendment under the rubric of the Fourth Amendment. *See*

24  *Yin*, 95 F.3d at 870 – 871; *Norman-Bloodshaw*, 125 F.3d at 1269.

25         103.    For the reasons discussed in Paragraphs 88 – 94 above, Defendants Tyler and

26  Ortega, in their official and representative capacities as directors of CAL FIRE and CalHR,

27  respectively, have violated and are violating Plaintiffs' right to privacy under the Fourteenth

28  Amendment.

104.     Plaintiffs and other similarly situated employees have been irreparably harmed by Defendants' violation of the Fourteenth Amendment of the U.S. Constitution, the extent of which is unknown at this time.

105.     WHEREFORE, Plaintiffs pray for the relief set forth in Paragraphs 1 – 12 in the Prayer section below.

## PRAYER

WHEREFORE, Plaintiffs pray judgment against Defendants as follows:

1.     For declaratory relief in the form of a declaration from this Court that by requiring CAL FIRE employees to waive their privacy rights during any mandatory COVID-19 testing processes, or suffer discipline or forced expenditure of accrued unused leave, Defendants Tyler and Ortega, in their official and representative capacities, have violated the provisions of the ADA, GINA, and the Fourth, Fifth, and Fourteenth Amendment of the U.S. Constitution as listed in the First, Second, Third, Fifth, Sixth, and Seventh Causes of Action above and in so doing have infringed upon the rights of these CAL FIRE employees.

2.     For declaratory relief in the form of a declaration from this Court that by requiring CAL FIRE employees to waive their privacy rights during any mandatory COVID-19 testing processes, or suffer discipline or forced expenditure of accrued unused leave, all Defendants have violated the provisions of the California Constitution as listed in the Fourth Cause of Action above and in so doing have infringed upon the rights of these CAL FIRE employees.

3.     For injunctive relief ordering Defendants to take all steps necessary to stop or prevent CAL FIRE employees from being required to waive their privacy rights as a prerequisite to or as a part of any tests for COVID-19, that are required under CAL FIRE's and/or CalHR's rules and are administered by CAL FIRE, CalHR, or any of its or their vendors.

4.     For injunctive relief ordering Defendants to take all steps necessary to stop or prevent CAL FIRE employees from being disciplined for their refusal to waive their privacy rights as a prerequisite to or as a part of any tests for COVID-19, that are required under CAL FIRE's and/or CalHR's rules and are administered by CAL FIRE, CalHR, or any of its or their vendors.

5.       For injunctive relief ordering Defendants to take all steps necessary to require Color to immediately cease disclosing CAL FIRE employees' confidential information to third parties and/or otherwise using this information beyond those actions that are necessary to complete testing employees' samples for COVID-19;

6.       For injunctive relief ordering Defendants to take all steps necessary to require Color to identify any CAL FIRE employees' confidential information that has been disseminated to third parties and the parties that received this information;

7.       For injunctive relief ordering Defendants to take all steps necessary to require Color to use all best efforts to cause any third parties to which it disclosed CAL FIRE employees' confidential information, to return such information to Color or destroy it;

8.       For injunctive relief ordering Defendants to take all steps necessary to require Color to destroy any CAL FIRE employees' confidential information in its possession once COVID-19 testing and reporting the results of such testing to CAL FIRE and the applicable employees have been completed;

9.       For injunctive relief ordering Defendants to take all steps necessary to rescind the Color-CDPH Agreement if Color and/or any relevant third parties fail to comply with Defendants' demands or efforts to perform the acts set forth in Paragraphs 5 through 8 of this Prayer.

10.      For reasonable attorneys' fees pursuant to Code of Civil Procedure section 1021.5, Labor Code section 2698 et seq., or any other lawful basis;

11.      For costs of suit herein incurred; and

12.      For such other and further relief as the Court may deem proper.

Dated:  October  17, 2022          MESSING ADAM & JASMINE LLP


By   _____*/s/ Gary M. Messing*_____
       Gary M. Messing
       Wendi J. Berkowitz
       Matthew Taylor
       Attorneys for Plaintiffs