IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH DURAN, MICHAEL ESPARZA,<br><br>    Plaintiffs,<br><br>  v.<br><br>CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, CALIFORNIA DEPARTMENT OF HUMAN RESOURCES, JOE TYLER, ERAINA ORTEGA,<br><br>    Defendants. | Case No.  22-cv-06120-CRB<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS** |

   Plaintiffs Ralph Duran and Michael Esparza bring this action for declaratory and injunctive relief against their employer, the California Department of Forestry and Fire Protection ("CAL FIRE"), the California Department of Human Resources ("CalHR"), and the respective heads of those agencies, Joe Tyler and Eraina Ortega.  Compl. (dkt. 1) ¶¶ 1–6, 11–14.  Plaintiffs assert that Defendants forced their employees to conform with a mandatory COVID-19 testing program that required the submission of personal and medical information and waiver of their privacy rights to a third-party vendor, Color Health, Inc. ("Color").  Id. ¶¶ 6–8.

   Defendants move for judgment on the pleadings.  See Mot. (dkt. 46).  As explained below, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and GRANTS the motion.

## I.     BACKGROUND

### A.     Parties

Plaintiff Ralph Duran is employed by CAL FIRE as a Fire Captain.  Compl. ¶ 9.
Plaintiff Michael Esparza is also employed by CAL FIRE; he was a Fire Apparatus
Engineer until on or about January 23, 2022, when he became a Fire Captain.  Compl. ¶
10; Amended Answer (dkt. 43) ¶ 10.

CAL FIRE is a state agency that provides fire protection and stewardship services
throughout the state.  Compl. ¶ 11.  CalHR is the appointing authority of CAL FIRE
employees and acts as the representative of the governor in his capacity as "state
employer" for labor relations purposes.  Compl. ¶ 12; FAA ¶ 12.  Defendant Joe Tyler is
the Director of CAL FIRE; defendant Eraina Ortega is the Director of CalHR.  Compl.
¶¶ 13–14.

### B.     COVID-19 Testing Policy

In August 2021, CAL FIRE implemented a policy requiring its employees to either
show proof of vaccination against COVID-19 or undergo weekly testing.  Id. ¶¶ 20–21.
Because they did not provide proof of vaccination, Plaintiffs were subject to weekly
testing.  Id. ¶¶ 3, 9–10, 41–45.  Under this policy, failure to comply could result in
disciplinary action up to and including dismissal.  Id. ¶ 21.

CAL FIRE's mandatory testing program was administered by a third-party vendor,
Color.  Id. ¶¶ 4, 22.  To undergo testing, Plaintiffs were required to disclose personal
information and sign privacy waivers.  Id. ¶¶ 4, 22, 41, 43.  These waivers allowed Color
to disclose their provided personal and medical information (including test results, genetic
data, and family health information) to third parties, including not only governmental
agencies and medical providers but also unidentified, possibly foreign, companies.  Id. ¶¶
23–40.  Color retained broad leeway to disclose said information, including for purposes
unrelated to COVID-19 testing.  Id. ¶ 26.

At some point after January 19, 2022, Color revised its policies, including its
privacy policy.  Id. ¶¶ 30–31.  Although the new policies seemingly limited the scope of

Color's privacy waivers, Plaintiffs allege that the revised terms were so muddled that Color retained the same leeway to disclose private data as before.  Id.  ¶¶ 30–40.

On September 15, 2022, CAL FIRE announced that it would begin "transitioning away from mandatory testing."  Id. ¶ 50.  Plaintiffs allege that it is not clear which aspects of the program may continue in the future, but mandatory testing is not currently required.  Id.  Plaintiffs further allege that Color retains their confidential information, that Color has already disclosed confidential information to third parties, and that CAL FIRE may reactivate the testing program at any time.  Id. ¶ 51.

### C.    Procedural History

Plaintiffs assert seven causes of action for violations of the ADA, the Genetic Information Nondiscrimination Act, Article I of the California Constitution, and the Fourth, Fifth, and Fourteenth Amendments, seeking declaratory and injunctive relief.  Id. ¶¶ 57–105.

After Plaintiffs filed their complaint, Defendants answered, asserting sixty-six affirmative defenses.  See Answer (dkt. 21) ¶¶ 118–183.  Plaintiffs moved to strike.  Mot. to Strike (dkt. 25).  The Court denied the motion, giving Defendants leave to amend their answer.  Order Denying Mot. to Strike (dkt. 42).  Defendants amended their answer, and the instant motion followed.  See Amended Answer; see also Mot.; Opp'n (dkt. 48); Reply (dkt. 49).

## II.    LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings is properly granted when the material facts are not in dispute and the moving party is entitled to judgment as a matter of law.  Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).  Because a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion to dismiss, the same legal standard applies.  Cafasso v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) applies when a

complaint lacks either "a cognizable legal theory" or "sufficient facts alleged" under such a theory.  Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019).  Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678.  When evaluating a motion to dismiss, the court "must take all factual allegations as true and draw all reasonable inferences in favor of the nonmoving party."  Murguia v. Langdon, 61 F.4th 1096, 1106 (9th Cir. 2023) (citing Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987)).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

## III.   DISCUSSION

Defendants raise three individually sufficient grounds for a judgment in their favor—sovereign immunity, standing, and mootness.  Each is addressed in turn below.

### A.   Defendants Are Immune from Suit Under the Eleventh Amendment

Defendants assert that Plaintiffs' claims are barred because the state agency Defendants (CAL FIRE and CalHR) have not waived sovereign immunity and the state officer Defendants (Tyler and Ortega) cannot be sued under Ex Parte Young, 209 U.S. 123 (1908).  Mot. at 12–16, Reply at 1–5.  The Court agrees.

#### 1.   State Agency Defendants Have Not Waived Sovereign Immunity

Defendants assert that the state agency Defendants are entitled to sovereign

United States District Court
Northern District of California

4

immunity under the Eleventh Amendment, they have not waived that immunity, and therefore the state constitutional privacy claim (the only claim brought against the agency Defendants, see Compl. ¶¶ 79–87) is barred. Mot. at 12–13. Plaintiffs argue that Eleventh Amendment immunity is an affirmative defense, which is the Defendants' burden to prove, and they have failed to do so. See Opp'n at 8 (citing ITSI T.V. Prods., Inc. v. Agric. Ass'ns, 3 F.3d 1289, 1291–92 (9th Cir. 1993)).

In general, the Eleventh Amendment prevents private parties from suing states absent a valid abrogation or express waiver of that right. Hibbs v. Dep't of Hum. Res., 273 F.3d 844, 850 (9th Cir. 2001). Although the Ninth Circuit has held that the assertion of Eleventh Amendment immunity is an affirmative defense in ITSI T.V. Prod., Inc. v. Agric. Ass'ns, Plaintiffs misapply ITSI. The court in ITSI addressed whether those defendants could prove they qualified as "arms of the state." ITSI, 3 F.3d at 1292. If they could not, then those defendants would not be afforded the protections of the Eleventh Amendment. See id. 1293–94. The court held that "[i]n general, a claim of Eleventh Amendment immunity will occasion serious dispute only where a relatively complex institutional arrangement makes it unclear whether a given entity ought to be treated as an arm of the state." Id. at 1292.

There is no such dispute in this case. The Ninth Circuit has expressly held that the Eleventh Amendment applies to state agencies. Hibbs, 273 F.3d at 850. CAL FIRE and CalHR are, based on Plaintiffs' own allegations, state agencies. Compl. ¶¶ 11–12. Furthermore, a state must either voluntarily invoke a federal court's jurisdiction or make a "clear declaration" that it intends to submit itself to federal jurisdiction to waive its Eleventh Amendment rights. Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675–76 (1999); see also Port Auth. Trans-Hudson Corp. v. Fenney, 495 U.S. 299, 305 (1990). Not only has the state not made a clear declaration of waiver; it asserts the opposite. See Mot. at 12–13.

Accordingly, the Eleventh Amendment bars the state constitutional privacy claim against the state agency Defendants.

**2.    Ex Parte Young Does Not Apply to the State Officers**

Defendants further assert that the Eleventh Amendment immunizes the state officer Defendants, and that the <u>Ex Parte Young</u> exception does not apply because Plaintiffs seek retrospective relief and the state officer Defendants do not have a "direct connection" to enforcing the allegedly illegal aspects of the mandatory COVID-19 testing program.  Mot. at 14–15.  Plaintiffs respond that, because Color retains the ability to use and share their personal information, the harm is ongoing and prospective relief is possible.  Opp'n at 9–11.  They also contend that the state officer Defendants have the power to discipline CAL FIRE employees, and that it was the threat of such discipline that coerced Plaintiffs into waiving their privacy rights.  <u>Id.</u> at 13–14.

**a.    Plaintiffs Have Not Sufficiently Pled Ongoing Violations of Federal Law**

Although the Eleventh Amendment generally bars suits against states, <u>Ex Parte Young</u> allows citizens to sue state officers in their official capacities for violations of federal law.  <u>Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris</u>, 729 F.3d 937, 943 (9th Cir. 2013).  Relief afforded under <u>Ex Parte Young</u> is limited, however.  A court "may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief."  <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 102–03 (1984).  Accordingly, a complaint bringing claims against a state official must allege "an ongoing violation of federal law" and seek "prospective" relief.[1]  <u>Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.</u>, 535 U.S. 635, 645 (2002).

Defendants argue that, because CAL FIRE's testing program ended in September 2022, there are no ongoing violations of federal law and the relief that Plaintiffs seek is necessarily retrospective.  Mot. at 14.  Plaintiffs counter that relief is proper under <u>Ex Parte Young</u> if past violations continue to cause ongoing harm.  Opp'n at 10 (citing <u>Papasan v.</u>

---

[1] Plaintiffs' cited cases support the necessity of prospective relief under <u>Ex Parte Young</u>.  <u>See</u> Opp'n at 15 (citing <u>Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.</u>, 235 F. Supp. 3d 1132, 1163–64 (E.D. Cal. 2017) (allowing a suit against a state officer defendant only because his past conduct caused continuing harms that could be redressed by prospective injunctive relief).

Allain, 478 U.S. 265, 282 (1984)).  Plaintiffs point to a wrongful discharge suit, Doe v. Lawrence Livermore Nat'l Lab'y, 131 F.3d 836 (9th Cir. 1997) and a school record expungement case, Flint v. Dennison, 488 F.3d 816 (9th Cir. 2007), as examples where past conduct (in the former, withdrawal of a job offer, in the latter, school disciplinary proceedings) produced ongoing violations or harms (future denial of employment, a negative school record) that could be redressed by prospective relief (reinstatement, expungement).  See Opp'n at 10–11.  Plaintiffs argue that they have also sufficiently pled ongoing harm, namely, that Color has disclosed and continues to disclose their personal information to third parties, and that such disclosure constitutes an ongoing violation of their privacy rights.  See id. at 11–13.

Although Plaintiffs do allege that Color has collected and disclosed Plaintiffs' personal information to third parties, the allegations do not rise to the level of plausibility required by Iqbal.  Color's policies, as alleged in the Complaint, give Color broad license to use and disclose information.  Compl. ¶¶ 23–40.  But Plaintiffs only allege "on information and belief" that Color has disclosed their information to third parties, see id. ¶¶ 6, 51(b); they do not otherwise allege any facts indicating that Color has actually disclosed their information to third parties.  See, e.g., Menzel v. Scholastic, Inc., No. 17-CV-05499-EMC, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018) ("[W]hile facts may be alleged upon information and belief, that does not mean that conclusory allegations are permitted. A conclusory allegation based on information and belief remains insufficient under Iqbal/Twombly.").  Plaintiffs' allegations focus on what Color may do with their information under its policies.  Compl. ¶¶ 23–40.  But without any factually supported allegations of actual disclosure in the Complaint, or any non-speculative allegations of future disclosure, Plaintiffs only plausibly seek retrospective relief for their coerced signing Color's privacy waivers, rather than prospective relief for any future privacy violations.

United States District Court
Northern District of California

### b. Defendants Do Not Have a Direct Connection to Alleged Violations

Ex Parte Young also requires that the sued state official have some direct connection with the enforcement of the illegal act; a generalized duty to enforce state law or general supervisory power is insufficient.  Ass'n des Eleveurs, 729 F.3d at 943.  Defendants argue that the state officer Defendants did not enforce or administer the mandatory COVID-19 testing program.  Mot. at 15–16.  Plaintiffs respond that the state officers had authority over the discipline of CAL FIRE employees, and it was the threat of discipline that coerced Plaintiffs into waiving their privacy rights.  See Opp'n at 13–14.

Courts have generally held that Ex Parte Young only applies when the sued state officer is charged with directly enforcing an allegedly illegal statute or state policy.  In Ass'n des Eleveurs, the governor was entitled to sovereign immunity because his only connection to an allegedly illegal bird force-feeding statute was his general duty to enforce state law.  729 F.3d at 943.  The attorney general, however, could be sued, because the bird force-feeding statute explicitly authorized district attorneys to prosecute violations, and the attorney general can exercise the powers of a district attorney.  Id. at 943–44.  This distinction has held true in the COVID-19 context; the Eastern District of Washington held that Governor Inslee could not be sued for his general supervision of Washington's eviction moratorium, even as the court allowed suit against the attorney general because he possessed the requisite enforcement power.  Jevons v. Inslee, 561 F. Supp. 3d 1082, 1096 (E.D. Wash. 2021).

Plaintiffs cite Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp., 235 F. Supp. 3d 1132 (E.D. Cal. 2017) as an example of a sufficiently connected state officer, but Occidental is inapposite.  Although Occidental did hold that one of the defendants was sufficiently connected to the enforcement of an illegal state process, the court also distinguished other officials who were insufficiently connected, who are more akin to the officers Plaintiffs sue here.  Occidental, 235 F. Supp. 3d at 1162–64.  Occidental concerned the issuance of oil well permits, and the court held that Governor Brown was immune even though he allegedly "requested records. . ., advised . . . on [the]

8

permitting process, and fired a . . . supervisor based on her refusal to approve certain well-drilling permits." Id. at 1162–63.  Even though the governor intervened in the process, including to make personnel decisions, he lacked the "requisite enforcement authority to directly issue the permits in question or to change the rules governing the permit process" and was therefore immune.  Id.  Likewise, the court ruled a former state officer immune because he was no longer in a position to provide injunctive relief.  See id. at 1163.  On the other hand, the court allowed plaintiffs to sue the current director of the state agency in question, because he had a "direct role in approving the . . . permit decisions."  Id. at 1163–64.

Here, the state officer Defendants are not directly connected with the enforcement of an illegal statute or act.  Plaintiffs allege that the state officer Defendants were causally involved in coercing Plaintiffs to sign away their privacy rights; however, just as Governor Brown had no direct authority over the well-permitting process in Occidental, Plaintiffs do not allege that state officers controlled the selection of Color as a vendor, negotiated a contract with it, or otherwise dictated what privacy policies Color could require CAL FIRE employees to assent to.  Indeed, Plaintiffs allege that the state's Public Health Department entered into an agreement with Color in August 2021; therefore, if any public official retained the requisite authority to dictate the terms of the testing program, it is an official at the Health Department, and not CAL FIRE, CalHR or their leadership.  See Compl. ¶¶ 32–34, 36–37.

In sum, Plaintiffs claim that Defendants' enforcement of an otherwise legal program[2] has caused[3] a secondary violation of federal law, and that Defendants are,

---

[2] Plaintiffs emphasize they are not challenging the legality of the testing program itself.  Opp'n at 7.

[3] Plaintiffs have alleged a relatively tenuous causal relationship between the state officer Defendants' disciplinary authority and the harms the testing program caused.  Although Plaintiffs do allege threatened disciplinary action for failing to comply with the testing program, Plaintiffs ultimately complied with the program and did not suffer discipline.  Compl. ¶¶ 41–48.  Plaintiffs allege that one CAL FIRE employee was suspended for six months for refusing to comply with mandatory testing, but his refusal was apparently unconnected to Color's privacy waivers.  Id. ¶ 49.

1   through their disciplinary authority, ultimately responsible for Color's violation of

2   Plaintiffs' privacy rights.  This is too tenuous a connection to suffice under Ex Parte

3   Young and the cases applying it.

4        Accordingly, the state officer Defendants are not directly connected to the alleged

5   violations of federal law, and the Ex Parte Young exception does not apply.  While this

6   ground is individually sufficient to grant Defendants' motion, the Court also addresses the

7   other grounds for dismissal, standing and mootness.

8        **B.     Plaintiffs Lack Article III Standing**

9        To establish standing, a plaintiff must show they suffered an injury in fact that is

10  "concrete and particularized" and "actual or imminent"; that the injury was "fairly

11  traceable to the challenged action of the defendant"; and that it is "likely," as opposed to

12  merely "speculative," that the injury would be "redressed by a favorable decision."  Lujan

13  v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (cleaned up).  The Court addresses

14  only one aspects of standing: whether the alleged injury is concrete.[4]

15        **1.     Plaintiffs Have Not Suffered a Concrete Injury**

16        "A 'concrete' injury must be 'de facto'; that is, it must actually exist."  Spokeo,

17  Inc. v. Robins, 578 U.S. 330, 340 (2016).  Courts look to Congressional intent and long-

18  established common law harms to determine whether an injury is concrete.  Id. at 340–41;

19  see also TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2204 (2021).  "[V]iolations of the

20  right to privacy have long been actionable at common law."  Patel v. Facebook, 932 F.3d

21  1264, 1272 (9th Cir. 2019) (quoting Eichenberger v. ESPN, Inc., 876 F.3d 979, 983 (9th

22  Cir. 2017)).  A right to privacy encompasses "the individual's control of information

23  concerning his or her person."  Eichenberger, 876 F.3d at 983 (quoting U.S. Dep't of

24  Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 763 (1989).  The

25  Ninth Circuit has long included the control of medical information under the umbrella of

26

27  ───────────────
    [4] Defendants also argue that Plaintiffs do not have standing to seek injunctive relief, which
    requires a "showing of . . . real or immediate threat that the plaintiff will be wronged again."  City
28  of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).  Because this analysis closely mirrors
    mootness considerations, that issue is addressed below.

United States District Court
Northern District of California

cognizable privacy interests.  See, e.g., Norman-Bloodsaw v. Lawrence Berkeley Lab'y, 135 F.3d 1260, 1269 (9th Cir. 1998).

Data privacy cases in the Ninth Circuit emphasize the importance of either disclosure or unlawful collection of personal information in cases involving privacy rights. "[T]hat the plaintiffs' sensitive information was disseminated to third parties in violation of their privacy . . . is sufficient to confer standing."  In re Facebook, Inc., Consumer Priv. User Profile Litig., 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019).  In Facebook, plaintiffs' allegations of disclosure—first to one individual and then to a host of other unknown individuals and technology companies—constituted a concrete injury. Id. at 787.  In Eichenberger, the plaintiff alleged that defendant disclosed his information to a third party, Adobe Analytics.  876 F.3d at 981, 983; see also In re Nickelodeon Consumer Priv. Litig., 827 F.3d 262, 274 (3d Cir. 2016) ("While perhaps "intangible," the harm is also concrete in the sense that it involves a clear de facto injury, i.e., the unlawful disclosure of legally protected information.").

Even without disclosure, a plaintiff can demonstrate a concrete injury if their personal information was unlawfully collected.  "We conclude that the development of a face template using facial-recognition technology without consent (as alleged here) invades an individual's private affairs and concrete interests.  Similar conduct is actionable at common law."  Patel, 932 F.3d at 1273; see also Campbell v. Facebook, Inc., 951 F.3d 1106, 1119 (9th Cir. 2020) ("Plaintiffs' position that this was being done without consent meant that they claimed a violation of the concrete privacy interests that ECPA and CIPA protect, regardless of how the collected data was later used.").

Plaintiffs have alleged neither unauthorized disclosure nor unlawful collection, taking them outside of the ambit of concrete interests in the caselaw.  As discussed in the prior section, Plaintiffs have not plausibly pled Color's disclosure of their personal information; they have merely pled Color's right to disclose their information under its policies.  And because Plaintiffs do not challenge the validity of the testing program itself, Opp'n at 7, they do not allege that the initial collection of their health information was

11

1    unlawful.[5]

2    Accordingly, Plaintiffs have failed to allege a concrete injury that confers Article III

3    standing.[6]

4    **C.    Plaintiffs' Claims are Moot**

5    A case that "has lost its character as a present, live controversy" is moot and no

6    longer presents a case or controversy amenable to federal court adjudication.  Flint, 488

7    F.3d at 823 (quoting Am. Rivers v. Nat'l Marine Fisheries Serv., 126 F.3d 1118, 1123 (9th

8    Cir. 1997)).  Because the Court has already held that Plaintiffs have failed to allege

9    ongoing harm because they have not plausibly alleged that Color has previously disclosed

10   their information, the mootness inquiry focuses on whether Defendants can cause future

11   harm by restarting CAL FIRE's mandatory testing program.

12   **1.    Defendants' Conduct Does Not Fall Under the Voluntary
         Cessation Exception**

13

14   Plaintiffs assert that their case is not moot, in part because Defendants can reinstate

15   the mandatory testing program and once again force them to cede control of their personal

16   information to Color.  Compl. ¶ 51(c).

17   "The Supreme Court has long held that 'a defendant cannot automatically moot a

18   case simply by ending its unlawful conduct once sued.'"  Brach v. Newsom, 38 F.4th 6,

19   12–13 (9th Cir. 2022) (quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)).  The

20   voluntary cessation exception requires defendants "to satisfy 'the formidable burden of

21   showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be

22

23   [5] Even if Plaintiffs did challenge this collection as unlawful, courts have long held that requiring
      the collection of health information to the state for public health purposes does not automatically

24   amount to an impermissible invasion of privacy.  See Whalen v. Roe, 429 U.S. 589, 602 (1977);
      see also Burcham v. City of Los Angeles, 562 F. Supp. 3d 694, 702–04 (C.D. Cal. 2022).

25   [6] Additionally, to demonstrate Article III standing, a plaintiff also must demonstrate that "it must

26   be likely, as opposed to merely speculative, that the injury will be redressed by a favorable
      decision."  Lujan, 504 U.S. at 561 (internal quotations omitted).  While the parties did not brief the

27   issue of redressability, the Court is skeptical that any alleged injury related to Color's retention of
      Plaintiffs' data can be redressed by a favorable decision against Defendants.  See, e.g., de Cristo

28   Cano v. Biden, 598 F. Supp. 3d 921, 924–25 (S.D. Cal. 2022), appeal dismissed sub nom. Cano v.
      Biden, No. 22-55544, 2022 WL 3899847 (9th Cir. Aug. 19, 2022).

United States District Court
Northern District of California

expected to recur.'"  Campbell, 951 F.3d at 1120 (9th Cir. 2020) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190 (2000)).  Plaintiffs contend that Defendants have failed to show that it is "absolutely clear" that they will not restart the mandatory testing program.  Opp'n at 18.

Generally, Ninth Circuit courts have treated COVID-19 policies as non-recurring once retracted.[7]  In Brach v. Newsom, the Ninth Circuit held that California carried its burden to demonstrate that COVID-19 school closures would not be reinstated.  38 F.4th at 12–15.  Likewise, district courts have held that, once rescinded, COVID-19 policies are unlikely to recur.  See, e.g., Jeffrey-Steven of the House of Jarrett v. Ige, No. CV 21-00272 LEK-RT, 2021 WL 5286552, at *6 (D. Haw. Nov. 12, 2021) (holding that there is no "reasonable expectation that Plaintiff will be subjected to an inter-county travel quarantine requirement in the future"); see also Abiding Place Ministries v. Newsom, 465 F. Supp. 3d 1068, 1072 (S.D. Cal. 2020) (holding that new county COVID-19 guidelines moot ministries' motion for a preliminary injunction); Ass'n of Oregon Corr. Emps. v. Oregon, No. 6:21-CV-01485-MK, 2022 WL 3213044, at *3–4 (D. Or. Aug. 9, 2022) (reasoning that plaintiff's assertion that the governor would reinstate Oregon's vaccination executive order "does not rise above mere speculation"); Bradshaw v. Dahlstrom, No. 32-cv-292, 2022 WL 7953363, at *4–5 (D. Alaska Sept. 2, 2022) (recommending dismissal as state agency voluntarily withdrew challenged regulations while the case was pending), report and recommendation adopted, No. 32-cv-292, 2022 WL 4285921 (D. Alaska Sept. 16, 2022).[8]

In accord with the weight of authority on the issue, Plaintiffs only speculate that

---

[7] Additionally, the Ninth Circuit "treat[s] the voluntary cessation of challenged conduct by government officials with more solicitude . . . than similar action by private parties."  Board of Trs. of Glazing Health and Welfare Trust v. Chambers, 941 F.3d 1195, 1198 (9th Cir. 2019) (en banc) (quoting America Cargo Transp., Inc. v. United States, 625 F.3d 1176, 1180 (9th Cir. 2010)).

[8] Other circuits have followed this pattern.  See, e.g., Calvary Chapel of Bangor v. Mills, 52 F.4th 40, 49–50 (1st Cir. 2022); Eden, LLC v. Justice, 36 F.4th 166, 170–72 (4th Cir. 2022); Resurrection Sch. v. Hertel, 35 F.4th 524, 529–30 (6th Cir. 2022), cert. denied, 143 S. Ct. 372 (2022); Hawse v. Page, 7 F.4th 685, 692–94 (8th Cir. 2021).

United States District Court
Northern District of California

CAL FIRE might resume the testing program at some point in the future.  See Eden, 36 F.4th at 171; see also Ass'n of Oregon Corr. Emps., 2022 WL 3213044, at *4.  Plaintiffs point to the language of the September 2022 notice announcing a transition away from the testing program, which did not explicitly end the testing program in perpetuity.  But that notice states only that CAL FIRE will continue to comply with federal, state, and local guidelines, as well as COVID-19 reporting guidance.  See Compl. ¶ 50.  CAL FIRE has never announced an explicit or conditional return to the testing program, and Plaintiffs have not alleged that testing has continued at any point since.  See id.

Accordingly, Plaintiffs' claims are moot.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for judgment on the pleadings. Because Plaintiffs' claims fail on sovereign immunity, standing, and mootness grounds, the Court denies leave to amend as futile. See Leadsinger, 512 F.3d at 532.

**IT IS SO ORDERED.**

Dated: August 7, 2023

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California

14